**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. _____**

CAFE INTERNATIONAL HOLDING
COMPANY LLC, individually and
on behalf of all others similarly situated,

          Plaintiff,

v.                                      **CLASS ACTION**

CHUBB LIMITED and WESTCHESTER       **JURY TRIAL DEMANDED**
SURPLUS LINES INSURANCE COMPANY,

          Defendants.
_____/

## CLASS ACTION COMPLAINT

Plaintiff Cafe International Holding Company LLC, individually and on behalf of all others similarly situated, files this class action against Defendants Chubb Limited and Westchester Surplus Lines Insurance Company, and in support states the following:

### INTRODUCTION

1.  Plaintiff Cafe International Holding Company is the owner and operator of IT Italy, a fine dining restaurant located at 500 East Las Olas Boulevard in downtown Fort Lauderdale, Florida.

2.  To protect the restaurant and the income from operation of the restaurant, Plaintiff purchased a property insurance policy with policy number FSF15184188001 (the "Policy").

3.  The Policy was issued by Defendant Westchester Surplus Lines Insurance Company ("Westchester").  Defendant Chubb Limited ("Chubb") is Westchester's parent company.  Under the Policy, Chubb is responsible for receiving and managing claims and loss

notices, responding to questions about insurance and coverage, and receiving process served on Westchester's designated agent, among other things.

4.    The Policy is a bilateral contract: Plaintiff agreed to pay monthly premiums to Defendants, in exchange for Defendants' promises of coverage for certain losses.

5.    Among other types of coverage, the Policy protects Plaintiff against a loss of business income due to a suspension of the restaurant's operations.  This type of coverage is often referred to as business interruption coverage.

6.    The Policy also provides "Extra Expense" coverage, under which Defendants promised to pay expenses incurred to minimize the suspension of business.  Additionally, the Policy provides "Civil Authority" coverage, under which Defendants promised to pay for loss of business income caused by the action of a civil authority prohibiting access to the restaurant.

7.    Plaintiff duly complied with its obligations under the Policy, and paid the requisite premiums.

8.    Beginning in March 2020, Plaintiff was forced to suspend business operations at the restaurant, as a result of COVID-19.  Related actions of civil authorities also prohibited access to and occupancy of the restaurant.  This suspension, which is ongoing, has caused Plaintiff to suffer significant losses and incur significant expenses.

9.    Under the Policy, Defendants promised to cover these losses and expenses, and are obligated to pay for them.  But in blatant breach of their contractual obligations, Defendants have failed to pay for these losses and expenses.

10.    Upon information and belief, Defendants have failed to pay for similar losses and expenses by at least thousands of other insureds holding policies that are, in all material respects, identical.  In fact, the CEO of Chubb has publicly announced—on national television—that the

insurer intends to take the position that its standard property insurance policies do not cover claims related to COVID-19, and thus it does not intend to pay any business interruption claims related to COVID-19.

## THE PARTIES

11.     Plaintiff Cafe International Holding Company LLC is a Florida limited liability company organized to do business and doing business at 800 SE 4th Avenue, Suite 704, Hallandale Beach, Florida 33009.

12.     Defendant Westchester Surplus Lines Insurance Company is a Georgia corporation with its principal place of business in the state of Georgia.  Westchester is the issuer of the Policy.

13.     Defendant Chubb Limited is Westchester's parent company, and a publicly traded corporation organized under the laws of Switzerland.  Chubb has several duties and responsibilities under the Policy.  Among other things, it is responsible for receiving loss notices, managing claims, responding to questions about insurance and coverage, and receiving process served on Westchester's designated agent in the state of Florida.

14.     At all times material, Defendants engaged in substantial and not isolated activity on a continuous and systematic basis in the state of Florida, namely by issuing and selling insurance policies in Florida and by contracting to insure property located in Florida.

15.     Under the applicable law and the terms of the Policy, service of process on Defendants may be effectuated by serving their Registered Agent, the Chief Financial Officer of the state of Florida, located at 200 East Gaines Street, Tallahassee Florida 32399.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between Defendants and at least one member of each class; there are more than

one hundred members of each class; and the amount in controversy exceeds $5,000,000 exclusive of interest and costs.  This Court also has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202 and is authorized to grant declaratory relief under these statutes.

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and/or omissions giving rise to the claims occurred within the Southern District of Florida, a substantial part of property that is subject of the action is situated in this district, and Defendant Chubb has an office in this district located at 9130 South Dadeland Boulevard, Miami, Florida 33156.

18.     This Court has personal jurisdiction over both Defendants pursuant to Fla. Stat. § 48.193(1)(a) because Plaintiff's claims arise out of, among other things, Defendants conducting, engaging in, and/or carrying on business in Florida; Defendant Chubb's maintenance of an office in Florida; Defendants breaching a contract in this state by failing to perform acts required by contract to be performed in this state; and Defendants contracting to insure property in Florida, including but not limited to the premises insured under the Policy.  Defendants also purposefully availed themselves of the opportunity of conducting activities in the state of Florida by marketing their insurance policies and services within the state, and intentionally developing relationships with brokers, agents, and customers within the state to insure property within the state, all of which resulted in the policy at issue in this action.

## FACTUAL BACKGROUND

### *The Policy*

19.     In November 2019, Plaintiff obtained the Policy, a property insurance policy issued by Defendant Westchester.  The Policy has a policy period of November 29, 2019 to November

29, 2020. The insured property under the Policy is 500 East Las Olas Boulevard, Suite 200, in Fort Lauderdale, Florida, the location of IT Italy Restaurant.[1]

20.     The Policy is an all-risk insurance policy. In an all-risk insurance policy, all risks of loss are covered unless they are specifically excluded.

21.     Consistent with the all-risk nature of the Policy, Defendants specifically agreed to pay for all losses caused by "Covered Causes of Loss," defined as "direct physical loss unless the loss is excluded or limited in this policy."

22.     One type of coverage provided by the Policy is for loss of business income, often called business interruption insurance. This coverage is specifically provided for in a section of the Policy titled "Business Income (and Extra Expense) Coverage Form."

23.      Pursuant to this Form, Defendants promised to pay for "Loss of Business Income" caused by a Covered Cause of Loss. Specifically, Defendants promised to pay for the loss of Business Income sustained due to the necessary "suspension" of the insured's "operations" during the "period of restoration."

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration".

24.     Each of the operative terms of this coverage provision is defined as follows.

25.     Business Income means the net profit that the business would have earned absent the suspension of operations, plus any continuing normal operating expenses, including payroll.

> Business Income means the:
> a. Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and
> b. Continuing normal operating expenses incurred, including payroll.

---

[1]     The Policy is attached to this complaint as Exhibit "A."

26.     Suspension means, among other things, a slowdown or cessation of the insured's business activities.

> **6.** "Suspension" means:
>
>   **a.** The slowdown or cessation of your business activities; or
>
>   **b.** That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

27.     Period of Restoration means the period of time beginning 72 hours after physical loss or damage to the property and ending on the date when the property is repaired or the date when business is resumed at a new location, whichever is earlier.

> **3.** "Period of restoration" means the period of time that:
>
>   **a.** Begins:
>
>     **(1)** 72 hours after the time of direct physical loss or damage for Business Income Coverage; or
>
>     **(2)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;
>
>     caused by or resulting from any Covered Cause of Loss at the described premises; and
>
>   **b.** Ends on the earlier of:
>
>     **(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
>
>     **(2)** The date when business is resumed at a new permanent location.

28.     Additionally, under the Policy, Defendants also promised to cover "Extended Business Income."  This coverage requires Defendants to pay for loss of business income *beyond* the Period of Restoration under certain conditions.

29.     Specifically, Defendants promised to pay for the actual loss of Business Income during the period that begins on the date that the insured property is repaired, and ends either 60

days thereafter or on the date when operations are restored to the level which would generate business income to normal levels, whichever is earlier.

30.    In addition to promising to pay for loss of Business Income, under the Policy, Defendants also promised to pay for certain necessary "Extra Expense[s]."  Extra Expenses mean expenses that the policyholder incurs to, for example, minimize the suspension of business.

31.    The Policy also provides "Civil Authority" coverage.  Under this type of coverage, Defendants promised to pay for the loss of Business Income and Extra Expense that the Plaintiff sustained as a result of "action of civil authority that prohibits access to the described premises [IT Italy Restaurant]."

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1)  Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2)  The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

32.    This Civil Authority provision is an independent basis for business interruption coverage.  That is, it can be triggered even when the standard business interruption coverage is not.

33.     Parts of the Policy, including the "Business Income (and Extra Expense) Coverage Form," are standardized forms drafted by the Insurance Services Office (ISO).  The ISO is a company that drafts standard policy language for use in insurance contracts.

34.     In 2006, the ISO drafted a new endorsement, CP 01 40 07 06, acknowledging that claims for business interruption losses would be filed under existing policy language for losses resulting from the presence of disease-causing agents.  Endorsement CP 01 40 07 06, which other insurers have since incorporated in policies, provides that the insurer "will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  Significantly, Defendants chose to not include this endorsement in Plaintiff's Policy.

35.     Plaintiff's Policy does not contain any exclusion which would apply to allow Defendants to deny coverage for losses caused by COVID-19 and related actions of civil authorities taken in response to COVID-19.

36.     Accordingly, because the Policy is an all-risk policy and does not specifically exclude the losses that Plaintiff has suffered, those losses are covered.

**_Plaintiff's covered losses_**

37.     As of April 18, 2020, according to the Florida Department of Health, COVID-19 is present in all of Florida's 67 counties, with Miami-Dade and Broward counties being the most affected counties.  As of April 18, Broward County, where Fort Lauderdale is located, has had over three thousand confirmed cases of COVID-19, and at least 115 deaths.

38.     The presence of COVID-19 and the public health emergency it has created have prompted actions by civil authorities throughout the United States ("Civil Authority Actions"), including but not limited to civil authorities with jurisdiction over IT Italy Restaurant: the City of

Fort Lauderdale, Broward County, and the state of Florida.  These Civil Authority Actions have restricted and prohibited access to the insured property.

39.     On March 20, 2020, the Governor of Florida issued Executive Order 20-70.  This Order, which expressly covers only Broward County and adjacent Palm Beach County, requires all restaurants, bars, pubs, and similar establishments with seating for more than ten people to close on-premises food service.

40.     On March 26, 2020, Broward County issued Emergency Order 20-03, "Directing Shelter-in-Place: Safer at Home Policy."  Among other things, this Order required the closure of all non-essential businesses, including restaurants and bars.  Emergency Order 20-03 was expressly issued in response to the propensity of COVID-19 and its disease-causing agent to "physically caus[e] property damage."

41.     On March 30, 2020, the Governor of Florida signed Executive Order 20-89, ordering Broward County, among other counties, "to restrict public access" to non-essential businesses.

42.     In Florida, violations of an executive order issued by the Governor pursuant to the State Emergency Management Act are second-degree misdemeanors punishable by imprisonment.

43.     The presence of COVID-19 caused direct physical loss of and/or damage to the covered premises under the Policy by, among other things, damaging the property, denying access to the property, preventing customers from physically occupying the property, causing the property to be physically uninhabitable by customers, causing its function to be nearly eliminated or destroyed, and/or causing a suspension of business operations on the premises.

44.     The Civil Authority Actions prohibiting public access to the covered premises and the surrounding area were issued in response to dangerous physical conditions and caused a suspension of business operations on the covered premises.

45.     As a result of the presence of COVID-19, IT Italy Restaurant has suffered a suspension of business operations, sustained losses of business income, and incurred extra expenses.

46.     As a result of the Civil Authority Actions, IT Italy Restaurant has suffered a suspension of business operations, sustained losses of business income, and incurred extra expenses.

47.     These losses and expenses have continued through the date of filing of this action. Indeed, as of the date of filing, the restaurant remains closed.

48.     These losses and expenses are not excluded from coverage under the Policy.  And because the Policy is an all-risk policy, and Plaintiff has complied with its contractual obligations, Plaintiff is entitled to payment for these losses and expenses.

49.     Accordingly, Plaintiff provided notice of its losses and expenses to Defendants, consistent with the terms and procedures of the Policy.

50.     But contrary to the plain language of the Policy, and to Defendants' corresponding promises and contractual obligations, Defendants have refused to pay for Plaintiff's losses and expenses.

## CLASS ACTION ALLEGATIONS

51.     The class claims all derive directly from a single course of conduct by Defendants: their systematic and uniform refusal to pay insureds for losses suffered due to the COVID-19 pandemic and the related actions taken by civil authorities to suspend business operations.

52.     Plaintiff brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), and/or 23(b)(3), as well as 23(c)(4), of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

53.     Plaintiff seeks to represent nationwide classes defined as:

a)      All persons and entities with Business Income coverage under a property insurance policy issued by Defendants that suffered a suspension of business due to COVID-19, and for which Defendants have denied a claim for the losses or have otherwise failed to acknowledge, accept as a covered loss, or pay for the covered losses  ("the Business Income Coverage Class").

b)      All persons and entities with Civil Authority coverage under a property insurance policy issued by Defendants that suffered loss of Business Income and/or Extra Expense caused by an action of a civil authority, and for which Defendants have denied a claim for the losses or have otherwise failed to acknowledge, accept as a covered loss, or pay for the covered losses ("the Civil Authority Coverage Class").

c)      All persons and entities with Extra Expense coverage under a property insurance policy issued by Defendants that sought to avoid or minimize the suspension of business caused by COVID-19 and/or the actions of civil authorities in response to COVID-19, and for which Defendants have denied a claim for the expenses or have otherwise failed to acknowledge, accept as a covered expense, or pay for the covered expenses ("the Extra Expense Coverage Class").

54.     Excluded from each defined proposed Class are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns;

governmental entities; Class Counsel and their employees; and the judicial officers and Court staff assigned to this case and their immediate family members.

55.     Plaintiff reserves the right to modify, expand, or amend the definitions of the proposed Classes, as appropriate, during the course of this litigation.

56.     This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

**Numerosity and Ascertainability**

57.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1).  The members of each proposed Class are so numerous that individual joinder of all Class members is impracticable. There are, at a minimum, thousands of members of each proposed Class, and these individuals and entities are spread out across the country.

58.     The identity of Class members is ascertainable, as the names and addresses of all Class members can be identified in Defendants' or their agents' books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

**Predominance of Common Issues**

59.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because this action involves common questions of law and fact which predominate over any questions affecting only individual Class members.  Defendants issued all-risk policies to all the members of each proposed Class in exchange for payment of premiums by the Class members. The questions of law and fact affecting all Class members include, without limitation, the following:

a)     Whether Plaintiff and the Class members suffered a covered loss under the common policies issued to members of the Class;

b)      Whether Defendants wrongfully denied all claims based on COVID-19;

c)      Whether Defendants' Business Income coverage applies to a suspension of business caused by COVID-19 and/or related actions of civil authorities taken in response to the presence or threat of COVID-19;

d)      Whether Defendants' Civil Authority coverage applies to a loss of Business Income caused by the orders of local, municipal, city, county, and/or state governmental entities requiring the suspension of business during the outbreak of COVID-19 in the United States;

e)      Whether Defendants' Extra Expense coverage applies to efforts to avoid or minimize a loss caused by COVID-19;

f)      Whether Defendants have breached their contracts of insurance through a uniform and blanket denial of all claims for business losses related to COVID-19 and/or the related actions of civil authorities taken in response to the presence or threat of COVID-19;

g)      Whether Plaintiff and the Class members suffered damages as a result of Defendants' actions; and

h)      Whether Plaintiff and the Class members are entitled to an award of reasonable attorneys' fees, interest, and costs.

**Typicality**

60.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Plaintiff's claims are typical of the claims of the Class members and arise from the same course of conduct by Defendants.  Plaintiff and the other Class members are all similarly affected by Defendants' refusal to pay under their property insurance policies.  Plaintiff's claims are based upon the same legal theories as those of the other Class members.  Plaintiff and the other Class members sustained

damages as a direct and proximate result of the same wrongful practices in which Defendants engaged. The relief Plaintiff seeks is typical of the relief sought for the absent Class members.

**Adequacy of Representation**

61. This action satisfies the requirements of Fed. R. Civ. P. 23(a)(4) because Plaintiff will fairly and adequately represent and protect the interests of Class members. Plaintiff has retained counsel with substantial experience in prosecuting complex class action litigation.

62. Plaintiff and its counsel are committed to vigorously prosecuting this action on behalf of the Class members and have the financial resources to do so. Neither Plaintiff nor its counsel has interests adverse to those of the Class members.

**Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests**

63. This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1). Plaintiff seeks class-wide adjudication as to the interpretation and scope of Defendants' property insurance policies. The prosecution of separate actions by individual members of the proposed Classes would create an imminent risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants.

**Final Injunctive and/or Corresponding Declaratory Relief with respect to the Class is Appropriate**

64. This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendants acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive and/or corresponding declaratory relief with respect to the Class members. The class claims all derive directly from Defendants' systematic and uniform refusal to pay insureds for losses suffered due to the COVID-19 pandemic and the related actions taken by civil authorities to suspend business operations. Defendants' actions or refusal to act are grounded upon the same generally applicable legal theories. Indeed, the CEO of

Chubb has publicly stated that the insurer intends to take the position that its standard property insurance policies do not cover claims related to COVID-19, and thus it does not intend to pay any business interruption claims related to COVID-19.

**Superiority**

65.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The common questions of law and of fact regarding Defendants' conduct and the interpretation of the common language in their property insurance policies predominate over any questions affecting only individual Class members.

66.    Because the damages suffered by certain individual Class members may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for all individual Class members to redress the wrongs done to each of them individually, such that many Class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

67.    The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation.  Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public of class treatment in this Court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

68.     Plaintiff is not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action.  Rule 23 provides the Court with authority and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges.   The Court may, on motion of Plaintiff or on its own determination, certify nationwide, statewide and/or multistate classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Rule 23(c)(5) to divide any Class into subclasses.

## CAUSES OF ACTION

### COUNT I: DECLARATORY JUDGMENT
**(On behalf of the Business Income Coverage Class)**

69.     Plaintiff re-adopts and re-alleges paragraphs 1 through 68 above.

70.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income Coverage Class.

71.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

72.     Plaintiff's Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

73.     In the Policy, Defendants promised to pay for losses of business income sustained as a result of perils not excluded under the Policy.  Specifically, Defendants promised to pay for losses of business income sustained as a result of a suspension of business operations during the Period of Restoration.

74.     COVID-19 caused direct physical loss of and damage to IT Italy Restaurant and other Class members' insured premises, resulting in suspensions of business operations at these premises.  These suspensions have caused Plaintiff and Class members to suffer losses of business income.

75.     These suspensions and losses triggered business income coverage under the Policy and other Class members' policies.

76.     Plaintiff and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

77.     Defendants, without justification, dispute that the Policy and other Class members' policies provide coverage for these losses.

78.     Plaintiff seeks a Declaratory Judgment that its Policy and other Class members' policies provide coverage for the losses of business income.

79.     An actual case or controversy exists regarding Plaintiff's and other Class members' rights and Defendants' obligations to reimburse Plaintiff and other Class members for the full amount of these losses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiff requests that this Court enter a Declaratory Judgment declaring that the Policy and other Class members' policies provide coverage for Class members' losses of business income.

### COUNT II: BREACH OF CONTRACT
**(On behalf of the Business Income Coverage Class)**

80.     Plaintiff re-adopts and re-alleges paragraphs 1 through 68 above.

81.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income Coverage Class.

82.     Plaintiff's Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

83.     In the Policy, Defendants promised to pay for losses of business income incurred as a result of perils not excluded under the Policy.  Specifically, Defendants promised to pay for losses of business income sustained as a result of a suspension of business operations during the Period of Restoration.

84.     COVID-19 caused direct physical loss of and damage to IT Italy Restaurant and other Class members' insured premises, resulting in suspensions of business operations at these premises.  These suspensions have caused Class members to suffer losses of business income.

85.     These suspensions and losses triggered business income coverage under the Policy and other Class members' policies.

86.     Plaintiff and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

87.     Defendants, without justification, have refused performance under the Policy and other Class members' policies by denying coverage for these losses and expenses.  Accordingly, Defendants are in breach of the Policy and other Class members' policies.

88.     As a result of Defendants' breaches of the Policy and other Class members' policies, Plaintiff and other Class members have suffered actual and substantial damages for which Defendants are liable.

WHEREFORE, Plaintiff, individually and on behalf of other Class members, seeks compensatory damages resulting from Defendants' breaches of the Policy and other Class

Members' policies and seek all other relief deemed appropriate by this Court, including attorneys' fees and costs.

### COUNT III: DECLARATORY JUDGMENT
### (On behalf of the Extra Expense Coverage Class)

89.     Plaintiff re-adopts and re-alleges paragraphs 1 through 68 above.

90.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income Coverage Class.

91.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

92.     Plaintiff's Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

93.     Specifically, Defendants promised to pay for Extra Expenses incurred by Plaintiff and other Class members during the Period of Restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises.  These Extra Expenses include expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

94.     COVID-19 caused direct physical loss of and damage to IT Italy Restaurant and other Class members' insured premises, resulting in suspensions of business operations at these premises.  As a result, Plaintiff and other Class members have incurred Extra Expenses.

95.     These Expenses triggered Extra Expense coverage under the Policy and other Class members' policies.

96.     Plaintiff and the other Class members have complied with all applicable provisions of their respective policies, including payment of premiums.

97.     Defendants, without justification, dispute that the Policy and other Class members' policies provide coverage for these Extra Expenses.

98.     Plaintiff, individually and on behalf of the other members of the Extra Expense Coverage Class, seeks a Declaratory Judgment that its Policy, and those of other members of the Extra Expense Coverage Class, provides coverage for these Extra Expenses.

99.     An actual case or controversy exists regarding Class members' rights and Defendants' obligations under Class members' policies to reimburse Class members' for these Extra Expenses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiff requests that this Court enter a Declaratory Judgment declaring that the Policy and other Class members' policies provide coverage for Class members' Extra Expenses.

### COUNT IV: BREACH OF CONTRACT
#### (On behalf of the Extra Expense Coverage Class)

100.     Plaintiff re-adopts and re-alleges paragraphs 1 through 68 above.

101.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income Coverage Class.

102.     Plaintiff's Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the Policy.

103.     Specifically, Defendants promised to pay for Extra Expenses incurred by Plaintiff and other Class members during the Period of Restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises.  These Extra Expenses include expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

20

104.     COVID-19 caused direct physical loss of and damage to the IT Italy Restaurant and other Class members' insured premises, resulting in suspensions of business operations at these premises.  These suspensions have caused Class members to incur Extra Expenses.

105.     These Expenses triggered Extra Expense coverage under the Policy and other Class members' policies.

106.     Plaintiff and the other Class members have complied with all applicable provisions of the Policy, including payment of premiums.

107.     Defendants, without justification, have refused performance under the Policy and other Class members' policies by denying coverage for these Extra Expenses.  Accordingly, Defendants are in breach of the Policy and other Class members' policies.

108.     As a result of Defendants' breaches of the Policy and other Class members' policies, Plaintiff and other Class members have suffered actual and substantial damages for which Defendants are liable.

WHEREFORE, Plaintiff, individually and on behalf of other Class members, seeks compensatory damages resulting from Defendants' breaches of the Policy and other Class Members' policies and seek all other relief deemed appropriate by this Court, including attorneys' fees and costs.

### COUNT V: DECLARATORY JUDGMENT
**(On behalf of the Civil Authority Coverage Class)**

109.     Plaintiff re-adopts and re-alleges paragraphs 1 through 68 above.

110.     Plaintiff brings this Count individually and on behalf of the other members of the Business Income Coverage Class.

111.     Under 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to declare the rights and other legal relations of the parties in dispute.

112.    Plaintiff's Policy, as well as the policies of other Business Income Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses for claims covered by the policies.

113.    In the Policy and other Class members' policies, Defendants promised to pay for losses of business income sustained and extra expenses incurred when, among other things, a Covered Cause of Loss causes damage to property near the insured premises, the civil authority prohibits access to property near the insured premises, and the civil authority action is taken in response to dangerous physical conditions.

114.    Plaintiff and other Class members have suffered losses and incurred expenses as a result of actions of civil authorities that prohibited access to insured premises under the Policy and Class members' policies.

115.    These losses satisfied all requirements to trigger Civil Authority coverage under the Policy and other Class members' policies.

116.    Plaintiff and the other Class members have complied with all applicable provisions of the Policy, including payment of premiums.

117.    Defendants, without justification, dispute that the Policy provides coverage for these losses.

118.    Plaintiff seeks a Declaratory Judgment that its Policy and other Class members' policies provide coverage for the losses that Class members have sustained and extra expenses they have incurred caused by actions of civil authorities.

119.    An actual case or controversy exists regarding Class members' rights and Defendants' obligations under Class members' policies to reimburse Class members for these losses and extra expenses. Accordingly, the Declaratory Judgment sought is justiciable.

WHEREFORE, Plaintiff, individually and on behalf of other Class members, requests that this Court enter a Declaratory Judgment declaring that the Policy provides Civil Authority coverage for the losses and extra expenses incurred by Plaintiff and the other Class members.

## COUNT VI: BREACH OF CONTRACT
### (On behalf of the Civil Authority Coverage Class)

120.    Plaintiff re-adopts and re-alleges paragraphs 1 through 68 above.

121.    Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Coverage Class.

122.    Plaintiff's Policy, as well as the policies of other Civil Authority Coverage Class members, are insurance contracts under which Defendants were paid premiums in exchange for promises to pay Class members' losses and expenses covered by the Policy.

123.    In the Policy and other Class members' policies, Defendants promised to pay for losses of business income sustained and extra expenses incurred when a Covered Cause of Loss causes damage to property near the insured premises, the civil authority prohibits access to property near the insured premises, and the civil authority action is taken in response to dangerous physical conditions.

124.    Plaintiff and other Class members have suffered losses and incurred expenses as a result of actions of civil authorities that prohibited access to insured premises under the Policy and Class members' policies.

125.    These losses satisfied all requirements to trigger Civil Authority coverage under the Policy and other Class members' policies.

126.    Plaintiff and the other Class members have complied with all applicable provisions of the Policy, including payment of premiums.

127.    Defendants, without justification, have refused performance under the Policy and other Class members' policies by denying coverage for these losses and expenses.  Accordingly, Defendants are in breach of the Policy and other Class members' policies.

128.    As a result of Defendants' breaches of the Policy and other Class members' policies, Plaintiff and other Class members have suffered actual and substantial damages for which Defendants are liable.

WHEREFORE, Plaintiff seeks compensatory damages resulting from Defendants' breaches of the Policy and other Class members' policies. and seek all other relief deemed appropriate by this Court, including attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants, as follows:

A.    Entering an order certifying the proposed nationwide Classes, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Counsel for the classes;

B.    Entering declaratory judgments on Counts I, III, and V in favor of Plaintiff and the members of the Business Income Coverage Class, Civil Authority Coverage Class, and Extra Expense Coverage Class as follows:

i.    Business Income, Civil Authority and Extra Expense losses and expenses incurred and sustained as a result of COVID-19 and related civil authority actions are insured and covered losses and expenses under Plaintiff's and Class members' policies; and

ii.  Defendants Westchester and Chubb are obligated to pay for the full amount of the Business Income, Civil Authority and Extra Expense losses and expenses sustained and incurred, and to be sustained and incurred, as a result of COVID-19 and related civil authority actions are insured and covered losses and expenses under Plaintiff and Class members' policies;

C.  Entering judgments on counts II, IV, and VI in favor of Plaintiff and the members of the Business Income Coverage Class, Civil Authority Coverage Class, and Extra Expense Coverage Class; and awarding damages for breach of contract in an amount to be determined at trial;

D.  An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

E.  An award of costs and attorneys' fees; and

F.  Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

The undersigned hereby demands a trial by jury as to all issues so triable.

Dated: April 19, 2020

**PODHURST ORSECK, P.A.**

 /s/ Steven C. Marks
Steven C. Marks (Fla. Bar. No. 516414)
Aaron S. Podhurst (Fla. Bar. No. 63606)
Lea P. Bucciero (Fla. Bar. No. 84763)
Matthew P. Weinshall (Fla. Bar. No. 84783)
Kristina M. Infante (Fla. Bar. No. 112557)
SunTrust International Center
One Southeast 3rd Ave, Suite 2300
Miami, Florida 33131
Phone: (305) 358-2800
Fax: (305) 358-2382
smarks@podhurst.com
apodhurst@podhurst.com

lbucciero@podhurst.com
mweinshall@podhurst.com
kinfante@podhurst.com

**BOIES SCHILLER FLEXNER LLP**

/s/ Stephen N. Zack
Stephen N. Zack (Fla. Bar. No. 145215)
Bruce Weil (Fla. Bar. No. 816469)
James Lee (Fla. Bar. No. 67558)
Marshall Dore Louis (Fla. Bar. No. 512680)
100 Southeast 2nd Street, Suite 2800
Miami, FL 33131
Tel: (305) 539-8400
Fax: (305) 539-1307
szack@bsfllp.com
bweil@bsfllp.com
jlee@bsfllp.com
mlouis@bsfllp.com

David Boies (*pro hac vice forthcoming*)
Nick Gravante (*pro hac vice forthcoming*)
Alex Boies (*pro hac vice forthcoming*)
55 Hudson Yards, 20th Floor
New York, NY 10001
Tel: (212) 446-2320
dboies@bsfllp.com
ngravante@bsfllp.com
aboies@bsfllp.com