UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 20-21641-CIV-GOODMAN
[CONSENT CASE]

CAFE INTERNATIONAL
HOLDING COMPANY LLC,

     Plaintiff,

v.

WESTCHESTER SURPLUS
LINES INSURANCE COMPANY,

     Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Passion. Creativity. Tenacity. These are all traits exhibited by Plaintiff's counsel in their opposition to Defendant Westchester Surplus Lines Insurance Company's motion for judgment on the pleadings [ECF No. 58] in this putative class action lawsuit for damages a restaurant allegedly sustained because of the COVID-19 pandemic. But these virtues, admirable as they may be, must be squared against the unambiguous language of the commercial property insurance policy.

The Plaintiff-proffered legal arguments, while fascinating and adroit and maybe even an illustration of "outside-the-box" thinking, are not enough to permit the insured restaurant-owning corporation to avoid the same conclusions and results which dozens

of courts applying Florida law have decided in insurers' favor about COVID-19-related insurance claims.

At bottom, an insured like Plaintiff Cafe International Holding Company LLC must show "direct physical loss of or damage to" its restaurant, as that is the precise coverage language from the policy. Plaintiff's succinct and conclusory allegations about COVID-19-caused damage, which it could not specifically identify or explain during a multi-hour hearing, are insufficient to escape the great weight of legal authority holding that physical damage is required.

The virus "does not cause direct loss or damage to a property sufficient to trigger coverage," a reality which appears to be why Plaintiff's counsel was unable to provide any specific facts to support the conclusory allegation of coronavirus physical damage to the restaurant. Plaintiff may have lost business because of the pandemic, but a decline in restaurant revenue or profits is merely an economic loss, not a loss covered by the policy.

The simple fact that the coronavirus *may* have been somehow "present" at Plaintiff's restaurant does not give rise to the direct physical loss or damage necessary to generate coverage. Moreover, the generic notion that the policy must be interpreted "harmoniously," a theory which Plaintiff's counsel offered up at the hearing, is also inadequate to cause a result different than the one reached by dozens of courts. And the suggestion that this Court should focus on the existence of a virus exclusion in *other* Westchester policies (and conclude that its absence in the policy involved here is

substantively significant) is contrary to the rule that an exclusion (or its absence) cannot *create* coverage not provided for in the coverage language.

The Undersigned empathizes with Plaintiff's plight, just like I empathize with other businesses which have suffered (and continue to suffer) from the COVID-19 pandemic. I also appreciate the energy which was invested into the theories presented by counsel in connection with a COVID-19 claim against an insurance carrier. But these factors cannot alter the inescapable reality that the unambiguous language of the insurance policy simply does not provide the coverage requested here.

In effect, Plaintiff is trying to fit a square legal argument peg into a round contract hole. Cafe International has been persistent and creative, there's no doubt about that. But that resourcefulness does not change the reality that the hole still remains round after being subjected to legal pulls. For these reasons, which I will outline in greater detail below, the Undersigned **grants** Westchester's motion for judgment on the pleadings and **dismisses** the Complaint **with prejudice**.

Westchester's motion for judgment on the pleadings requires an interpretation of the insurance policy, so the factual background will begin with the policy.

I.    **Background**

      a.  **The Policy**

Westchester issued a commercial property insurance policy (the "Policy") to Cafe International -- the owner and operator of IT Italy, a restaurant in Fort Lauderdale,

Florida -- for the policy period from November 29, 2019 to November 29, 2020. [ECF Nos. 1, ¶¶ 1, 19 (Complaint); 1-1, p. 2 (Policy)]. The Policy specifies what it covers and what it does not. Coverage is available only if Cafe International proves that a "Covered Cause of Loss" caused direct physical loss of or damage to the property. [ECF No. 1-1, pp. 51-52]. The Policy defines "Covered Cause of Loss" as "direct physical loss unless the loss is excluded or limited in this policy." *Id.* at p. 62.

The Policy provides three types of coverage relevant here: Business Income, Extra Expense, and Civil Authority. Each type of coverage is triggered only where there is (i) direct physical harm to property (ii) caused by or resulting from a Covered Cause of Loss.

i.  Business Income and Extra Expense Coverage

The Business Income provision calls for Westchester to pay Cafe International for certain losses of income if Cafe International had to suspend operations due to (i) "direct physical loss of or damage to property at [Cafe International's insured] premises" and (ii) caused by or resulting from a "Covered Cause of Loss." *Id.* at p. 51. Specifically, the Business Income provision states:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" **must be caused by direct physical loss of or damage to property at premises** which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Id.* (emphasis added).

The Extra Expense provision similarly requires "direct physical loss or damage to property" and applies "only if the Declarations show that Business Income Coverage applies at that premises." *Id.* In particular, the Extra Expense provision states:

> Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been **no direct physical loss or damage to property** caused by or resulting from a Covered Cause of Loss.

> We will pay Extra Expense (other than the expense to repair or replace property) to:

> (1) Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

> (2) Minimize the "suspension" of business if you cannot continue "operations".

> We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

*Id.* at pp. 51–52 (emphasis added).

Both the Business Income and Extra Expense provisions provide coverage only during the "period of restoration." *See id.* Under the Policy:

> "Period of restoration" means the period of time that:

> a. Begins:

> (1) 72 hours after the time of **direct physical loss or damage** for Business Income Coverage; or

a. Immediately after the time of **direct physical loss or damage** for Extra Expense Coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

b. Ends on the earlier of:

(1) The date **when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality**; or

(2) The date when business is resumed at a new permanent location.

"Period of restoration" does **not** include any increased period required due to the enforcement of or compliance with any ordinance or law that:

(1) **Regulates the construction, use or repair, or requires the tearing down, of any property**; or

(2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

*Id.* at p. 59 (emphasis added).

## ii. Civil Authority Coverage

The Civil Authority provision affords coverage when government orders prohibit access to Cafe International's insured premises, but only if a Covered Cause of Loss causes "damage to property" other than Cafe International's restaurant. *Id.* at p. 52. Specifically, the Civil Authority provision provides:

When a Covered Cause of Loss causes **damage to property other than property at the described premises**, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action

of civil authority that prohibits access to the described premises, provided that both of the following apply:

(1) Access to the area immediately surrounding the **damaged property** is prohibited by civil authority **as a result of the damage**, and the described premises are within that area … ; and

(2) The action of civil authority is taken in response to dangerous physical conditions resulting from **the damage** or continuation of the Covered Cause of Loss that caused **the damage**, or the action is taken to enable a civil authority to have unimpeded access to the **damaged property**.

*Id*. at pp. 52, 79 (emphasis added).

### b.  The Complaint (and the Restaurant's Claimed Losses)

Cafe International filed suit on April 20, 2020, asserting six claims for breach of contract and declaratory judgment on the theory that it is entitled to Business Income, Extra Expense, and Civil Authority coverage from Westchester for certain losses Cafe International allegedly suffered during the coronavirus pandemic. [ECF No. 1]. The Complaint alleges that, in March 2020, Cafe International was "forced to suspend business operations at [its] restaurant, as a result of COVID-19" and because civil authority orders allegedly "**prohibit[ed]** public access" to the restaurant. *See id.* at ¶¶ 8, 39-41, 44, 46 (emphasis added).

The Complaint also asserts a legal conclusion that the suspension of Cafe International's business operations resulted from "[t]he **presence** of COVID-19 caus[ing] direct physical loss of and/or damage to" Cafe International's restaurant. *Id.* at ¶¶ 43, 45, 74, 84, 94 (emphasis added). But the Complaint does not, and cannot, allege facts

supporting this conclusory allegation. *See id.* Moreover, at the hearing on Westchester's motion for judgment on the pleadings, Plaintiff's counsel was likewise unable to articulate any specific facts about this conclusory allegation; he said it was not commercially feasible to now pinpoint any specific property which was in fact damaged.

In particular, Plaintiff's counsel argued that the physical attachment of the virus to restaurant property is a physical injury. And, he further argued, because the virus is and was pervasive, it is "highly likely" that a vast amount of surfaces would have been contaminated by the virus. But neither the Complaint nor the explanations offered up at the hearing pinpointed any fact-specific allegations of physical damage.

## II.    The Parties' Contentions

Westchester emphasizes that insurance contracts must be interpreted through the plain language of the policy. It contends that the policy language is clear and unambiguous, and that Plaintiff cannot sufficiently allege, let alone establish, coverage.

It emphasizes that business income loss, extra expense loss and civil authority loss all require direct physical harm to property. Westchester relies on a plethora of cases rejecting Covid-19 coverage under commercial property policies, including cases holding that the virus, even if present, is a temporary presence which can be cleaned. Westchester also argues that the insured property must tangibly change for coverage to apply and notes that there are no specific factual allegations of tangible change to restaurant property caused by the virus.

Westchester's motion also contends that the Civil Authority provision of the policy will provide coverage only where the civil authority prohibits access to the insured property due to damage to property elsewhere. Defendant contends that the Civil Authority did not *prohibit* access to the restaurant and that the damage alleged was not *elsewhere.*

Plaintiff, on the other hand, contends that it *has* alleged physical damage and that the Court is therefore required to accept that allegation as true for now, when evaluating a motion for judgment on the pleadings. Plaintiff also contends that the myriad other cases which ruled for insurers in Covid-19 cases are distinguishable because they did not involve an insured (like Westchester) which issues some policies with a separate virus-exclusion provision but others which lack the exclusion. Therefore, Plaintiff contends, it is illogical for Westchester to suggest that courts treat both types of policies identically.

In addition to focusing on the absence of a virus exclusion in the instant policy and its presence in other Westchester policies, Plaintiff also contends that a "holistic" interpretation of the policy undermines Westchester's suggested interpretation. At the hearing, Plaintiff's counsel slightly modified this contention, arguing that a "harmonious construction" of the policy is required.

Although Plaintiff's counsel explained that his client is not necessarily contending that all of the approximately three dozen Covid-19 insurance cases relied upon by Westchester were incorrectly decided, he contends that many of those cases are

inapposite because (1) plaintiffs in some cases failed to allege physical loss or damage; (2) some plaintiffs affirmatively excluded physical loss or damage; (3) the policy contained expressed virus exclusions; or (4) some courts applied a structural-injury requirement which Plaintiff here contends does not exist under Florida law.

By way of summary, Plaintiff's imaginative position asserts two theories which it hopes will differentiate its lawsuit from most other, similar ones, which were dismissed or subjected to adverse summary judgment rulings: (1) focusing on the absence of the virus exclusion in this specific policy; and (2) a flexible-type contract-interpretation approach embracing the themes of harmony and holisticness.

In its Reply, Westchester issues the reminder that an "all risk" policy is not an "all *loss*" policy. It contends that the existence or absence of a virus exclusion cannot create coverage and is irrelevant to determining if there is coverage in the first place. It also points out that this theory is not alleged in the Complaint. It challenges Plaintiff's argument that the Complaint's allegations must be deemed true at this procedural point, saying they are wholly conclusory and must be ignored.

Westchester relies upon "the slew of cases" which hold that the coronavirus does not cause direct physical loss of or damage to property. Concerning the Civil Authority coverage claim, Westchester emphasizes that the Policy requires civil authority orders which "prohibit" access to the insured premises -- but the ones here did not, as they allowed delivery, pick-up, takeout services and staff access to the restaurant.

10

Westchester concedes that a "read-the-policy-as-a-whole" approach is correct as a general legal principle, but it then notes that this principle is unhelpful to Plaintiff because the Complaint still fails to allege any well-pleaded facts showing direct physical loss of or damage to property at its restaurant.

Finally, Westchester brands the authority cited by Plaintiff as inapposite, easily-distinguishable, non-binding, unpersuasive outliers, which are contrary to Florida law or pre-COVID-19, non-Florida cases, and which "involved some physical force that changed the insured property itself or resulted in the property being permanently unusable or lost." [ECF No. 81, p. 10]. And it notes that Plaintiff's response "does not identify a single Florida case that has endorsed its theory of coverage." [ECF No. 81, p. 11].

## III.    Applicable Legal Principles and Analysis

Although Westchester's motion is one for judgment on the pleadings, the principles governing a motion to dismiss apply here.

"A motion for judgment on the pleadings is governed by the same standard as a Rule 12(b)(6) motion to dismiss." *Guarino v. Wyeth LLC*, 823 F. Supp. 2d 1289, 1291 (M.D. Fla. 2011) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)).

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the plaintiff must plead facts that make out a claim that is plausible on its face and raises the right to relief beyond a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content

11

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Conclusory allegations and legal conclusions "are not entitled to the assumption of truth," even if pleaded in the complaint. *Id.* at 679 (2009); *see also Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) ("[C]onclusory allegations, unwarranted factual deductions[,] or legal conclusions masquerading as facts will not prevent dismissal.").

A court must dismiss a plaintiff's complaint if it fails to nudge its "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

All parties here agree that Florida substantive law governs the substantive contract interpretation issues in this case. *See, e.g., Rando v. Gov't Emps. Ins. Co.*, 556 F.3d 1173, 1176 (11th Cir. 2009); *Sparta Ins. Co. v. Colareta*, 990 F. Supp. 2d 1357, 1362-63 (S.D. Fla. 2014); *James River Ins. Co. v. Epic Hotel, LLC*, No. 11-cv-24292, 2013 WL 12085984, at *3 (S.D. Fla. Jan. 9, 2013).

Likewise, the parties here also agree that this Court, in applying Florida law, must "adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise." *Davis v. Nat'l Med. Enters., Inc.*, 253 F.3d 1314, 1319 n.6 (11th Cir. 2001).

As the insured, Cafe International bears the burden of proving that it is entitled to coverage under the Policy. *See, e.g., S.O. Beach Corp. v. Great Am. Ins. Co. of N.Y.*, 305 F.

12

Supp. 3d 1359, 1364 (S.D. Fla. 2018), *aff'd*, 791 F. App'x 106 (11th Cir. 2019). Cafe International must plead sufficient facts (not merely legal conclusions) that, if proven, would establish that "'the plain language of the policy, as bargained for by the parties,'" provides coverage. *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004) (quoting *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 33 (Fla. 2000)).

Insurance policies are contracts. *See Lumbermens Mut. Cas. Co. v. August*, 530 So. 2d 293, 295 (Fla. 1988). A claim for breach of contract under Florida law requires three elements: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). As with any contract, courts "must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written." *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 569–70 (Fla. 2011) (quoting *Travelers Indem. Co. v. PCR Inc.*, 889 So. 2d 779, 785 (Fla. 2004)).

"Furthermore, '[i]n construing a contract, the legal effect of its provisions should be determined from the words of the *entire contract*,' and that construction must give 'effect to *all* of the provisions of the contract.'" *Summitbridge Credit Invs. III, LLC v. Carlyle Beach, LLC*, 218 So. 3d 486, 489 (Fla. 4th DCA 2017) (alteration in original) (quoting *Sugar Cane Growers Co-op. of Fla., Inc. v. Pinnock*, 735 So.2d 530, 535 (Fla. 4th DCA 1999)).

Interpretation of an insurance contract is a matter of law for a court to decide. *Gulf Tampa Drydock Co. v. Great Atl. Ins. Co.*, 757 F.2d 1172, 1174 (11th Cir. 1985). "The scope

and extent of insurance coverage is defined by the language and terms of the policy."

*Roberts v. Fla. Laws. Mut. Ins. Co.*, 839 So. 2d 843, 845 (Fla. 4th DCA 2003).

"The well-settled rule [is] that a court shall not rewrite a contract of insurance extending the coverage afforded beyond that plainly set forth in the insurance contract." *Oceanus Mut. Underwriting Ass'n (Bermuda) Ltd. v. Fuentes*, 456 So. 2d 1230, 1232 (Fla. 3d DCA 1984) (internal quotation marks omitted). To that end, "[i]nsurance contracts must be construed in accordance with the plain language of the policy." *Somethings Fishy Enters., Inc. v. Atl. Cas. Ins. Co.*, 415 F. Supp. 3d 1137, 1142 (S.D. Fla. 2019) (citing *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003)). "'[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms.'" *Id.* (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)).

So the issue is whether Florida law authorizes a claim against a carrier under the circumstances presented by the coronavirus pandemic.

### a. Business Income and Extra Expense Coverage

As noted very recently in a Southern District of Florida opinion, *AE Mgmt., LLC v. Illinois Union Ins. Co.*, "'a growing number of state and federal courts in Florida and around the country," however, "have considered the issue and have almost uniformly held that economic losses resulting from government orders closing businesses to slow the spread of COVID-19 are not covered under 'all risk' policy language identical to that in this case because such losses were not caused by direct physical loss of or damage to

14

the insured property.'" No. 20-2295-CV, 2021 WL 827192 (S.D. Fla. March 4, 2021) (citing

*Emerald Coast Restaurants, Inc. v. Aspen Specialty Ins. Co.*, No. 20-cv-5898, 2020 WL 7889061,

at *2 (N.D. Fla. Dec. 18, 2020)).

Several other district courts have also denied coverage under the civil authority,

business income and extra expense provisions. *See, e.g.*, *MENA Catering, Inc. v. Scottsdale*

*Ins. Co.*, No. 20-cv-23661, 2021 WL 86777, at *7 (S.D. Fla. Jan. 11, 2021) (Bloom, J.) ("There

is no 'direct physical loss' where the alleged harm consists of the mere presence of the

virus on the physical structure of the premises.") (discussing *Mama Jo's, Inc. v. Sparta Ins.*

*Co.*, 823 F. App'x 868, 879 (11th Cir. 2020)); *see also Sun Cuisine, LLC v. Certain Underwriters*

*at Lloyd's London*, No. 20-cv-21827, 2020 WL 7699672, at *4 (S.D. Fla. Dec. 28, 2020) (Gayles,

J.) ("Plaintiff's allegations provide the Court no reason to deviate from the prevailing

consensus in this Circuit and others regarding business interruption claims arising from

the COVID-19 pandemic" that such claims "do not plausibly show direct physical loss or

damage" to property); *see also El Novillo Restaurant v. Certain Underwriters at Lloyd's*

*London*, No. 20-cv-21525, 2020 WL 7251362, at *6 (S.D. Fla. Dec. 7, 2020) (Ungaro, J.)

(collecting cases and noting "federal district courts throughout the country have

dismissed substantially similar COVID-19 related lawsuits for failing to state a claim for

business income coverage" where the policy required proof of "direct physical loss of or

damages to property"); *see also Raymond H Nahmad DDS PA v. Hartford Cas. Ins. Co.*, No.

20-cv-22833, 2020 WL 6392841 (S.D. Fla. Nov. 2, 2020) (Bloom, J.) (same); *see also*

*LLC. v. Greenwich Ins. Co.*, No. 20-22615-Civ, 2020 WL 5051581 (S.D. Fla. Aug. 26, 2020) (Torres, Mag. J.) (same).

In fact, the legal headwinds which Plaintiff confronts here have not abated, as district courts in Florida continue to rule in favor of insurers in similar lawsuits. *See PF Sunset View, LLC v. Atlantic Specialty Ins. Co.*, No. 20-81224-CV, 2021 WL 1341602 (S.D. Fla. Apr. 9, 2021) (Cannon, J.) (Florida law) (granting insurer's motion for judgment on the pleadings in COVID-19–related insurance coverage case); *see also Graspa Consulting, Inc. v. United Nat'l Ins. Co.*, No. 20-23245-CIV, 2021 WL 1540907 (S.D. Fla. Apr. 16, 2021) (Torres, Mag. J.) (Florida law) (recommending insurer's motion to dismiss be granted with prejudice in COVID-19–related insurance coverage case); *Runway 84, Inc. v. Certain Underwriters at Lloyd's, London*, No. 0:20-cv-62257 AHS, ECF No. 15 (S.D. Fla. Mar. 31, 2021) (Singhal, J.) (Florida law) (granting insurer's motion to dismiss with prejudice in COVID-19–related insurance coverage case).

The same legal trend is occurring in courts in other parts of the country. *Cf. Bel Air Auto Auction, Inc. v. Great Northern Ins. Co.*, No. RDB-20-2892, 2021 WL 1400891 (D. Md. Apr. 14, 2021) (Bennett, J.) (Maryland law) (granting insurer's motion for judgment on the pleadings in COVID-19–related insurance coverage case and rejecting plaintiff's argument that absence of virus exclusion indicated there was coverage).

In citing recent cases involving COVID-19-related claims, the Undersigned notes that Plaintiff's counsel has already raised many of the same arguments asserted here in

other COVID-19–related insurance lawsuits in this District. *See 15 Oz Fresh & Healthy Food LLC v. Underwriters at Lloyd's London*, No. 1:20-cv-23407-AHS, ECF No. 15, at pp. 3-19 (S.D. Fla. Oct. 30, 2020); *Atma Beauty, Inc. v. HDI Glob. Specialty SE*, No. 1:20-cv-21745-DPG, ECF No. 20, at pp. 5-25 (S.D. Fla. Aug. 14, 2020). The courts in those cases expressly or implicitly rejected the arguments and held that the insureds failed to state a claim. *See id.*

But the Undersigned's analysis is not limited to parroting myriad other case citations in which Plaintiff's contract theory was rejected. Rather, it is also based on an independent assessment of the contract and the logical conclusion that any rational reading of the relevant contract language supports Westchester's interpretation of the contract.

The question before the Court is whether the Plaintiffs have met their burden to show that the plain language of the Policy's affirmative grant of coverage -- "direct physical loss of or damage to property" -- covers their alleged economic losses as a result of COVID-19 and subsequent government shutdown orders. *See, e.g.*, *S.O. Beach Corp.*, 305 F. Supp. 3d at 1364 (internal citation omitted) ("A plaintiff seeking to recover under an all-risks policy has the burden of proving that a loss occurred to the insured's property while the policy was in force.").

The plain meaning of the terms "direct physical loss of or damage to property" unambiguously requires actual, tangible damage to the physical premises itself, not merely economic losses unaccompanied by a demonstrable physical alteration to the

premises itself. This straightforward view of the unambiguous language of the policy is consistent with the Eleventh Circuit's decision in *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868 (11th Cir. 2020), which provides guidance and supports the Court's determination.

In *Mama Jo's*, the Eleventh Circuit affirmed the district court's conclusion that a restaurant failed to establish that it suffered a direct physical loss that would trigger coverage under an insurance policy. The restaurant claimed a loss after nearby roadway construction blew dust and debris inside its facility, causing an economic loss due to decreased customer traffic and imposing cleaning expenses on the restaurant. The insurer denied the claim after concluding that the restaurant did not suffer a "direct physical loss or damage" to the insured property, and the district court thereafter entered summary judgment in favor of the insurer.

On appeal, the Eleventh Circuit affirmed, applying Florida law. The Court noted that "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Id.* at 879 (citing *Homeowners Choice Prop. & Cas. v. Maspons*, 211 So. 3d 1067, 1069 (Fla. Dist. Ct. App. 2020); *Vazquez v. Citizens Prop. Ins. Corp.*, 304 So. 3d 1280, 1284 (Fla. Dist. Ct. App. 2020); *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 573 (6th Cir. 2012)) ("[C]leaning . . . expenses . . . are not tangible, physical losses, but economic losses."); *see also MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 779 (Cal. Ct. App. 2010) (internal citation omitted) ("A

18

direct physical loss contemplates an actual change in insured property."); *AFLAC Inc. v. Chubb & Sons, Inc.*, 260 Ga. App. 306, 581 S.E. 2d 317, 319 (2003).

Applying that guidance here supports the clear meaning of the Policy language at issue: the loss needs to come directly from an actual, demonstrable, physical harm to the premises itself.

Plaintiff contends that it *has* made the necessary allegation of harm. For example, paragraph 74 of the Complaint alleges that "COVID-19 **caused direct physical loss of and damage** to IT Italy Restaurant and other Class members' insured premises," resulting in "suspensions of business operations at these premises." (emphasis added). It made similar allegations in paragraphs 84, 94 and 104 of the Complaint.

But these claims are fact-free, detail-free, wholly conclusory allegations. The Undersigned questioned Plaintiff's counsel at the hearing about these allegations, asking for even one piece of restaurant property which was actually physically damaged. He had no illustrations. Instead, he said it was "not commercially feasible" to point to a specific piece of property. He said that Plaintiff intended to later engage experts to inspect the property, conduct tests and determine which property was damaged, and how. He could not, however, now allege (or even speculate about) any restaurant properties which were damaged.

Plaintiff's conclusory allegations are insufficient. Pleading the bare elements of a claim is insufficient as a matter of law. A complaint must allege *some* supporting facts,

*N.P.V. Realty Corp. v. Nationwide Mut. Ins. Co.*, No. 11-CV-1121, 2011 WL 4948542, at *4 (M.D. Fla. Oct. 17, 2011), but this one does not. Dismissal is therefore appropriate. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) ("[C]onclusory allegations, unwarranted factual deductions[,] or legal conclusions masquerading as facts will not prevent dismissal."); *SA Palm Beach LLC v. Certain Underwriters at Lloyds, London*, No. 20-cv-80677, 2020 WL 7251643, at *1-3 (S.D. Fla. Dec. 9, 2020) (insured's allegation that it "suffered a direct physical loss of [its] property" because it has "been unable to use [its] property for its intended purpose" was insufficient to sustain claim).

A plaintiff cannot escape the policy-required need to sustain a physical loss of or damage to property by simply asserting a fact-free allegation that the requisite damage was sustained. *Rococo Steak, LLC v. Aspen Specialty Ins. Co.*, No. 8:20-cv-2481, 2021 WL 268478, at *2 (M.D. Fla. Jan. 27, 2021) (noting that "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation" and dismissing with prejudice complaint alleging that COVID-19 damaged property, denied access to property, prevented customers from accessing property, rendered property physically uninhabitable, impaired property's function, and caused a suspension of business operations at property).

At the hearing, Plaintiff argued that the mere attachment of the coronavirus to any part of the restaurant is, in fact, a physical injury. Counsel argued that the virus was so prevalent that it is a virtual certainty that the virus was on Plaintiff's premises at some

20

point. But other courts in this district have already rejected this physical contamination theory.[1] A cogent and persuasive treatment of this issue is found in *Town Kitchen LLC v. Certain Underwriters at Lloyd's, London*, No. 20-22832, 2021 WL 768273, at *7 (S.D. Fla. Feb. 26, 2021):

> Lastly, the deadly coronavirus is surely an order of magnitude more dangerous than construction debris. However, to the extent this argument is about the danger each poses while resting on surfaces, they are both eliminated in the same way—with Lysol and a rag. At this point in the pandemic, it is widely accepted that life can go on with hand sanitizer and disinfecting wipes. Indeed, Town Kitchen has continued to operate a take-out business from the very premise they argue has suffered direct physical loss. The Eleventh Circuit's holding in *Mama Jo's* did not rely on the danger or harmlessness of the debris at issue, it relied on what needs to be done to "repair" the problem. Because the "repairs" here consist of the routine disinfecting with which we are all familiar and cleaning costs are not tangible, physical losses but rather economic losses, the Court rejects the Plaintiff's "physical contamination" theory—and ultimately **dismiss** its complaint for failure to state a claim for breach of contract and a declaratory judgment.

Moreover, "[U]nder Florida law, the phrase, 'direct physical loss of or damage to property' requires 'a distinct, demonstrable, **physical alteration of the property**' and does not include 'losses that are intangible or incorporeal.'" *AE Mgmt., LLC*, 2021 WL 827192, at *3 (emphasis added). Pure economic harm untethered to any physical alteration to property is insufficient to establish coverage. *First Watch Rests., Inc. v. Zurich Am. Ins. Co.*, No. 8:20-cv-2374, 2021 WL 390945, at *3-4 (M.D. Fla. Feb. 4, 2021) (holding

---

[1]     *This* argument is "nothing novel," as other plaintiffs "have tried and failed" because "coronavirus particles damage lungs[;], they do not damage buildings." *Graspa Consulting*, 2021 WL 1540907, at *9 (quoting *Town Kitchen*, 2021 WL 768273, at *4).

insured's "business losses due to COVID-19 orders [we]re economic losses, not the kind of physical loss or damage contemplated by the policy");

Cafe International's Complaint points to no tangible changes in the insured restaurant property itself. *See Mama Jo's*, 823 Fed. App'x at 879, where our appellate court cites *MRI Healthcare of Glendale, Inc.*, for the proposition that "[a] direct physical loss contemplates an **actual change in insured property**." 187 Cal. App. 4th at 779 (emphasis added).

Similarly, counsel did not at the hearing specify any new allegations of tangible changes to the property itself which could be asserted in an amended pleading. Lacking those critical allegations supported by factual assertions, Plaintiff is unable to state a viable claim. *See Infinity Exhibits, Inc. v. Certain Underwriters at Lloyd's London Known as Syndicate PEM 4000*, No. 8:20-CV-1605-T-30AEP, 2020 WL 5791583, at *4-5 (M.D. Fla. Sept. 28, 2020) ("Significantly, Plaintiff is not the first insured to seek coverage due to COVID-19 government shutdown orders under a policy that limits coverage to losses caused by direct physical loss or damage to the property. Courts across the country have held that such coverage does not exist where, as here, policyholders fail to plead facts showing physical property damage . . . Here, there is no business income coverage and no civil authority coverage because the Amended Complaint fails to allege facts describing how the Property suffered any actual physical loss or damage.").

The Undersigned now turns to the two relatively novel theories urged by Plaintiff.

First, Plaintiff highlights the fact that its policy lacks a virus exclusion while other Westchester-issued police have one. According to Plaintiff, this makes this case different from all Westchester-cited cases because Westchester, "unlike most insurers" of which Plaintiff is aware, routinely issues policies containing the virus exclusion as well as policies lacking it. [ECF No. 75, p. 24]. This, says Westchester, means that there is coverage here, or that coverage could be triggered here (but could not be resolved in a motion for judgment on the pleadings). Plaintiff argues that Westchester's position "effectively proposes to treat both types of policies the same." [ECF No. 75, p. 24].

Classifying this point as "pivotal," Plaintiff argues that it "indicates that Westchester understood 'direct physical loss or damage' to at least possibly cover virus-related losses." [ECF No. 75, p. 24]. Otherwise, Plaintiff continues, "there would be no need to exclude virus-related losses from all-risk policies, and the ISO[2] virus exclusion would be superfluous in the policies in which it was incorporated, something disfavored by the law of Florida and most other states." [ECF No. 75, pp. 24-25].

Plaintiff relies on *In re: Society Insurance Co. COVID-19 Business Interruption Protection Insurance Litigation*, MDL No. 2694, 2021 WL 679109 (N.D. Ill. Feb. 22, 2021), because that Court considered the implications of the availability of the virus exclusion for policies which lack the exclusion. The *Society Insurance* Court denied the insurers'

---

[2]      According to numbered paragraph 33 of the Complaint, ISO stands for the Insurance Services Office, a company which drafts standard policy language for use in insurance contracts.

motions to dismiss and for summary judgment, and it suggested that there should be discovery regarding the insurers' use or non-use of the virus exclusion. *Id.* at *n.6.

But Westchester describes the *Society Insurance* decision as a non-binding outlier, and the Undersigned notes that several other courts have criticized the opinion. *See e.g., Tria WS LLC v. American Automobile Ins. Co.*, No. 20-4159, 2021 WL 1193370, at *5 (E.D. Pa. Mar. 30, 2021) (viewing *Society Insurance* as an opinion which "contort[ed] these [policy] provisions far beyond their normal meaning").

Plaintiff's "but-we-don't-have-a-virus-exclusion" argument conflates two separate questions: first, whether there is coverage, and second, if so, whether coverage is excluded by some other provision.

The Florida Supreme Court has specifically rejected an argument like the one Cafe International asserts here. In *Siegle v. Progressive Consumers Ins. Co.*, 819 So.2d 732 (2002), the policyholder argued "that the absence of an exclusion from coverage for diminished value should cause th[e] [c]ourt to find coverage." *Id.* at 740. But the Court rejected the argument as "entirely without merit" and "directly contrary to the tenets of insurance contract interpretation," which hold that "the absence of an exclusion" does not itself mean coverage exists. *Id.* Rather, the court explained, it is "undeniable" that "the existence or nonexistence of an exclusionary provision in an insurance contract *is not at all relevant* until it has been concluded that the policy provides coverage for the insured's claimed loss." *Id.*

And here, Plaintiff has not established or adequately alleged coverage, which requires direct physical loss of or damage to its property.

For this very reason, several federal courts -- including at least three in this District -- have rebuffed similar arguments in the COVID-19 context. For example, in *Café La Trova LLC v. Aspen Specialty Insurance Co.*, the insured argued that its COVID-19–related losses must be covered because its "[p]olicy does not contain a virus exclusion" while other insurance policies do. No. 20-22055, 2021 WL 602585, at *6 n.7 (S.D. Fla. Feb. 16, 2021). But the court rejected that argument, emphasizing that under Florida law and basic insurance principles "exclusionary provisions plainly cannot be used to establish coverage in the first instance." *Id.*; *see also, e.g., Island Hotel Props., Inc. v. Fireman's Fund Ins. Co.*, No. 4:20-cv-10056, 2021 WL 117898, at *1, *4 (S.D. Fla. Jan. 11, 2021) (dismissing complaint despite insured's argument that losses not specifically excluded should be covered); *El Novillo Rest. v. Certain Underwriters at Lloyd's, London*, No. 1:20-cv-21525, 2020 WL 7251362, at *4 (S.D. Fla. Dec. 7, 2020) (finding "Plaintiffs' reliance on the Policies' exclusionary provisions must be rejected as a means to establish coverage"); *Prime Time Sports Grill, Inc. v. DTW 1991 Underwriting Ltd.*, No. 8:20-cv-771, 2020 WL 7398646, at *2 (M.D. Fla. Dec. 17, 2020) (dismissing with prejudice a COVID-19-related lawsuit filed by a bar/restaurant operator and rejecting insured's argument that "there is no specific exclusion in the policy for losses causes by governmental suspension orders or viruses").

Plaintiff's second creative hypothesis (advocating for a "harmonious" construction of the policy) fares no better.

The Policy provides Business Income and Extra Expense coverage only during the "period of restoration," which is tied to the time when the property is "repaired, rebuilt[,] or replaced" -- a phrase that, as discussed above, plainly requires an actual, physical change in the insured property. In response, Cafe International theorizes that a property can be "restored" even if it was never tangibly altered. But that interpretation leaves out at least two aspects of the "period of restoration" provision, namely (i) that the period begins only *after* there is "direct physical loss or damage," and (ii) that it ends not when the property is "restored" but when it is "repaired, rebuilt or replaced." And as the Eleventh Circuit in *Mama Jo's* put it, even if a business "slowdown … could be attributed to a 'period of restoration,'" there still is no coverage because the slowdown "*must be caused by direct physical loss of or damage to property*" in the first place. 823 F. App'x at 879-80 (emphasis added).

Moreover, the Policy's Building and Personal Property Coverage Form provides coverage "for *direct physical loss of or damage to* Covered Property" at Cafe International's restaurant "caused by or resulting from any Covered Cause of Loss." [ECF No. 1-1, p. 35]. But Plaintiff does not seek coverage under **that** Form for the cost to repair or replace any supposedly lost or damaged property. Thus, the Undersigned agrees with Westchester's argument that notwithstanding Cafe International's conclusory assertions to the

26

contrary, reading the policy as a whole further confirms that Plaintiff has not alleged any direct physical loss of, or damage to, its restaurant.

At the hearing, Plaintiff's counsel, in advocating the harmonious construction theory, argued that this principle means that the coverage provisions must be construed in a way which does not render the exclusions superfluous. But the policy here has no virus exclusion, so it is difficult to understand how any interpretation of the coverage provision could inappropriately render irrelevant an exclusion which is not present in the first place. *Cf. AE Mgmt.*, 2020 WL 827192 (dismissing with prejudice COVID-19 insurance coverage lawsuit because plaintiff restaurants failed to allege facts establishing coverage and therefore declining to consider the applicability of the policy's virus exclusion).

### b. Civil Authority Coverage

This analysis now shifts to Plaintiff's civil authority claim, which applies only if there is physical harm to some property away from the insured premises -- a requirement which Plaintiff fails to meet, as it did not plead it. Moreover, the civil authority coverage requires an order which *prohibited* access to the property.

Concerning the first requirement (i.e., action of a civil authority prohibits access to the insured property due to damage to property elsewhere), nowhere does Cafe International allege that the authorities' orders resulted from any damage to property elsewhere. Thus, no coverage exists under the Policy's Civil Authority provision as a

matter of law. *See Raymond H. Nahmad, DDS, P.A. v. Hartford Casualty Ins. Co.*, No. 20-cv-22833, 2020 WL 6392841, at *8 (S.D. Fla. Nov. 2, 2020) (finding no civil authority coverage where complaint alleged "no physical harm to any properties in the immediate area, only suspensions and closures in general due to government orders"); *AE Mgmt.*, 2021 WL 827192, at *4 (similar); *El Novillo*, 2020 WL 7251362, at *7 (same); *SA Palm Beach LLC*, 2020 WL 7251643, at *6; *Mena Catering*, 2021 WL 86777, at *7 (same); 15 *Oz Fresh & Healthy Food, LLC*, 2021 WL 896216, at *7 (same).

Cafe International's civil authority claim also fails for the second and separate reason that it does not clear the hurdle that civil authority orders actually **prohibited** access to its restaurant. Civil authority coverage is triggered only if an action of a civil authority "prohibits access" to the insured premises. [ECF No. 1-1, p. 52].

But no civil authority action ever prohibited access to Cafe International's restaurant; at most, the civil authority orders temporarily restricted Cafe International from serving food on-premises, while allowing the restaurant to provide delivery, pick-up and takeout services, and give access to employees and staff.

Plaintiff's lawsuit references orders which imposed a temporary closure of on-premises food service, permitting takeout and delivery. For this additional reason, Plaintiff's civil authority claim fails as a matter of law. *See, e.g., Nahmad*, 2020 WL 6392841, at *8-9 (finding orders hindering access without completely barring access do not trigger civil authority coverage); *15 Oz Fresh & Healthy Food*, 2021 WL 896216, at *7 (finding no

28

civil authority coverage where insured "d[id] not allege specific facts showing that it had no access to the restaurant as a result of the executive orders"); *Café La Trova*, 2021 WL 602585, at *11 (similar); *El Novillo*, 2020 WL 7251362, at *7 (same).

## IV.   Conclusion

The Court **grants** Westchester's motion and dismisses the Complaint.

In its Opposition, Plaintiff mentions its desire to file an amended complaint. At the hearing, counsel slightly amplified the reasons for this comment, but he did not pinpoint any specifics sufficient to overcome the overwhelming authority establishing that the virus did not trigger coverage because there are no plausible, sufficiently specific allegations of direct physical loss of or damage to the restaurant. Even if experts were permitted to inspect the restaurant and even if they concluded that the virus contaminated the restaurant or its equipment, this hypothetical new series of allegations would *still* be inadequate. *See Mama Jo's*, 823 F. App'x at 879 (stating under Florida law, "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical'").

Leave to amend can only be granted where a plaintiff identifies the legally cognizable allegations it will offer, and Cafe International does not and cannot do that here. *See, e.g., Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018) (stating leave to amend request must "set forth the substance of the proposed amendment or attach a copy of the proposed amendment"); *Mena Catering, Inc.*, 2021 WL 86777, at *10

(dismissing COVID-19–related complaint with prejudice because any amendment would be fruitless).

Because Plaintiff's proffered amendment would be futile, the dismissal is with prejudice.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on May 4, 2021.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All Counsel of Record

30